Hoffman and Hamilton for the defendants.
The goods, on which the prefent infurance was made, contain the ufual warranty againft illicit trade, and are alfo warranted American property. If then, from any circumftances of trade, or breach of neutral conduct the capture was juftiftable, the underwriter muft neceíFariíy be difeharged. It is important to ohferve, that the abandonment was on the capture, and not on the condemnation : for, the abandonment was on the 1ft of October 1799, and the condemnation not till the 17th of the fame month. Whatever then was the ftate of the afín red’s right at that period, muft govern the deciiion of this day. The queftion then will be, whether, from the circumftances of the cafe, there was probable caufe of capture ; for that is the point, however the condemnation may be, tho’ from the words of the fentence “ good and lawful prize,” it is manifeft the fentence proceeded on the ground that Thorres was interefted with Biagge. On warranties of property the rule of law is, that the warranty is not only affirmative that the property íhall be fuch as it is faid to be, and have all documents and papers neceffary to proteiSt it by evincing its neutrality, but it is alfo negative, that there íhall be no papers tending to a contrary concluíion. 1 Mars, on Ins. 317, to 319. Rich. v. Parker 7. D and E 705. So that though a veffel may be fvrniihed with every docufnent to eftabliih her neutral character, yet if others, tending to a contrary concluíion be found, the warranty of neutrality is not *553 during the voyage, aft with the moft perfect good faith towards belligerents; to do this, he íiiould iliew the whole of his papers, which ought to be ftri rictlv crenmne none falfe or fiftitious, and if any ihould be fo, they ought to be candidly produced, and the reafous faithfully related. If the voice of the carao be fiflitiouc, if there be any conce?íment ° . of papers, allowing even that tne cireumltances inoula be afterwards explained, they juftify carrying in, and at leaft, fubjeft to further proof. It is immaterial to the underwriter whether the explanation given be received as an. excufe to avoid condemnation or not: as between Mm and the un- , . . . r . r .. . , . . derwntten it is a forfeiture of neutrality, and the miurer is exonerated by the mala fides of the infured, though him and the captor it may be only a matter of further proof.The confequences, however, as they arife from the conduft of the aflured, are wholly at his rifle. Having made fchefe preliminary obfervations, it will be eafy to iliew the negative of the rule that has been laid down was broken, and that acconipliilied, to evince that the affirmative has not been complied with. Firft then as to the negative, that there were papers leading to a fufpicion of the want of neutrality. This is evident from the affidavit of Lovett himfelf: he fwears that he made out a fictitious invoice and account of fales. Thefe are his words, <c Well luiowing the depredations heretofore made by Britee iih cruifers upon American property, where the fame ap<c peared valuable, and particularly fo if in fpeeie or bullion, <c this deponent was induced, from what appeared to him <c prudential confiderations, to make a fiftitious invoice of “ the cargo of the faid fhip Flora out from New-Tork, and “ an account of fales of the fame in Cart1 isgeua, alfo an Invoice u and bill of lading of her cargo from Curthagena to New-<c York, whereby it would appear, that the fame was only cot-66 ton and fuitic, in order, that if fhe was boarded by a Britiih u cruifer, he might be permitted to proceed on his voyage more readily than if his cargo was fuliy expoied to view.” It was not till after repeated denials of any other cargo, not till affirmations over and over, that there was no other cargo than the cotton and fuitic on board, that the real invoice, and thc.fevcral clearances were delivered up 5 and even then
*554 not till the bullion and fpecie were difeovered. Thefe two articles were totally omitted in the invoice exhibited to the captors at the time of boarding the Flora. This alone was enough to authorife the detention of the veffel, nor is any attempt made at an explanation till the veffel is under libel in the court of admiralty. With what degree of credit that explanation could be received is worthy of obfervation. There is a bill of lading in which Lovett acknowledges the cargo to be flipped by Thorres on account and riik of Don Emanuel Garcia del Rio of Cadiz ; and though it may be faid, that a clearance to a Spaniih port was neceffary, ft ill the manner in which the letter of advice mentioning the ihipment is worded, does not tend to remove the impreflion of its being Spaniih property, and the place of deftination ufed merely as a blind. I11 that letter ihe is faid to fail properly regiftered for Cadiz, “ or any other port which might be to ci her advantage to avoid any rifle arifing from the enemy.” If then any other port was open to her, it is to be hoped, no ftrefs will be laid on the circumftance of her being in the track or route for New-York. Spaniih property may as well be fent to New-York as to Cadiz. Allowing, however, this to-be no more than a conjecture which a court of admiralty might make, it is impoflible to get over the cuftom-houfe bond,* given to land the cargo in Old Spain, and pay the duties. Is not this fuch a paper as the veffel ought not to have had ? And let it be remarked that no explanation of this and the other papers evincing Spaniih property, was given to the commander of the Britiih frigate at the time of the capture. All that have been enumerated were found concealed, denied and perfifted in. After the delivery of the fictitious papers, others were ailted for and denied : a fearch took place, and they were found. Have you any other cargo than cotton and fuftic was demanded ? None was the anfwer; in a moment after the bullion and doubloons were difeovered. Was not this having and doing-every thing a neuter ought not to have had and done ? Under all the circumftances of the cafe, can any one fay the condemnation was not well warranted ? For who would believe the explanations of the man whofe whole tenor of conduCt had.ihewn
*555 him unworthy of credit ? The court of admiralty would naturally confider, whether the explanations were confident with the circumftances, and the former declarations of the parties. Allowing it problematic whether Thorres was the whole and foie owner, no court nor jury on earth but what would be juftified in faying Thorres was interefted with Blagge. But when the papers are examined, (and this court is not confined to the fentencc) it will be feen, that Thorres was the adtual proprietor. In a letter, written by Drake, the fupercargo of the outward voyage, the confidential friend of the plaintiff, and dated a few days after the arrival of the veflel, he fays, “ The day after we entered the veflel we “ began to unload her, and deliver the goods to the oiwur, “ who at the end of eight days difpofed of the whole.” Who could this owner be but Thorres, to whom the goods were addrefled. We are aware of the explanation given by Lovett and Drake of the arrangement made at Carthagena, that the property iliould be ihipped in the name of Thorres. This, for eluding the revenue laws, might be neccifary, but why continue the deception to Blagge himfelf ? Is it not rather to be fuppofed that the truth came out ? Every one muft think fo, and no doubt can be entertained of this letter, which certainly was not a document to prove neutral property, having influenced in its condemnation. That this was a juft and proper conclufion, is manifeft from the letter of Thorres to Bon Emanuel Garda del Rio. The conlignment of the veflel from Blagge on Rio’s account is fully fet forth, and the account ef return cargo, agreeing with the afhtal quantity of cotton and fuftic, is mentioned. This letter is inftantiy followed by one from feme Spaniards of the names of Matteo Arrage and Juan de Francifco Martin, to a Don Charles Frazer of New-York, whom we have never yet difeovered, and to this fucceed feveral letters pointing out the whole fyftem of covering, by tranfmitting forms of invoices, &c. &c. to cloak the property. It is remarkable, that this letter is dated the fifth of June 1797, and fpeafcs cf the order of the November afterwards. This too was one of the fecreted papers, and evidently is meant for purpofes which do not meet the eye. At all events, it is one cf thefe negative papers. *556 which a neuter ought not to have. If the court will for one inftant advert to the fecurityihip of Thorres, and confider t]le amount to which it extends, they will naturally fay it is ¡mpo.flible that it iliould be entered into by any perfon not ai0p0]ute]y a partner in the concern. It was to be cancelled in a manner that proves Spaniih intereft. Either by a certificate, that'the articles were landed In Spain, or by proof of a capture and condemnation in an Engliih court. How could fuch papers be procured ? The very idea of their being to be brought forward, if the fails of capture and condemnation did not exift, leaves a mold unfavorable impreffion on the means that mult have been adopted. But it is not from inferences and reafonings that we are obliged to prove this was not American property. There is a written document, prcferved on the declaration of Lovett himfelf, that the property is Spaniih. In the clearance for Cadiz it is exprefsly fb ftated, and that is an official paper deferring full faith and credit. If the invoice be attended to, it is equally a fufpicious paper. The amount of the fades of the cargo out, are ftated to be 55,000 dollars 5 the cotton and fuftic, it is true, balance this, but from whence have the 30,000 dollars m ingots and fpecie arifen? Blagge had no funds in Carthagena 5 and his outward cargo is by the invoice Hated to be only 55,000» Thefe circumHances fliew fuch a mixture of intereHs between Blagge and Thorres, that the court of admiralty, unable to difcriminate the portions, juHly condemned the whole partncrfliip concern. That this was the principle on which die admiralty proceeded is manifeH, for they condemned what was claimed for Blagge, but acquitted Lovett’s and Drake’s proportion. The invoice in cyphers, however the charañer might have been explained, was an unneceflary and dangerous paper. It is faid, to be fure, to have been made for the amufement of the fupcrcargo, but it ferved to throw a further air of myHery over a tranfadlion already fufficiently myñerious. It is curious to obferve the reafon affigned for the taking out a clearance for Spain : That it was impoffible to obtain one for any other place 5 and yet there is on board the Flora another clearance directly for NcwYork, and both obtained from the fame office. It is true
*557 Lovett’s depofition fays, he does not know whether they were figned by the fame officers. But that is immaterial, they eftabliih the pollibility of having a clearance for New-York, and from the cuftom-houfe too. This then contradifis the pretence of neceflity. From the cafe it appears, that on the trial 66 it was admitted, that all trade between the A- ££ merican and Spanifh colonies is generally prohibited, and c£ that it is notorious that it is fo | but that fometimes fo£C reigncrs do obtain fpecial licence to trade with the Span-£C ifh colonies.” As then this trade without a licence is prohibited, and the claufe againft illicit trade is prcferved in the warranty “ feizure or detention in port only excepted,” it is plain the riik of illicit trade any where clfe was cxprefs}y at the hazard of the aiiured. If this be fo, certainly the confequences of fuch trade was equally a peril he undertook, himfelf to bear. It can never be contended, that though the principal is not at the hazard of the underwriter, yet that he is chargeable for the incident or refult. This doctrine would be againft the words of the policy, and againft reafon itfelf. It cannot be prefumed, that under a warranty of American property, which implies, that the property ihall be accompanied with all documents neceflary to prove it American, the underwriters contemplated that it ihould have every paper to give it the appearance of Spanifh. A riik not neceffarily to be encountered, is never to be imagined as included. The riik in port taken by the infurers would have covered the confequences of Smuggling the money : but as to any other rifle from illicit trade it was exprefsly declined. No ufage can, in the prefent cafe, he fet up. It was the very firft voyage. Therefore, none of the arguments to be derived from the Gftend cafe* can here apply. Allowing that the , r r „ „ , ° . papers made ule of were neceflary tor the voyage, yet, as it was anew trade,† the warranty being againft illicit comrnerce,, it was incumbent on the plaintiff to acquaint the underwriters of the circumííance, becaufe it undoubtedly encreafed the riik. On the principle of concealment then there cannot be a itronger cafe. In the cafe of Seton, Maitland & Co. there was not only a difclofure of the articles being contraband, but the very manner in which they would
*558 dipped was fpecified. But here nothing of this fort takes place, and the goods are at the ufual premium for American property fent forward with all the riik attending Spaniili. independent of this, at the time of the capture, the allured being guilty of ill faith towards the belligerent, affords a juftifiable caufe of feizure and detention by the breach of neutrality committed, and thus exonerates the underwriter. It is no anfwer that the double papers and concealment of ■ them was with a view to prevent being carried in : The fait is, that the reverfe was induced, and though falfe papers, or even fecreting them, may not lead to condemnation, yet when thefe circumftauces are mixed with falfehood, they warrant confifcation, and in the prefent cafe falfehood upon falfehood appears ; denial after denial of papers and cargo, all of which on inveftigation are found to be totally deftitute of truth. It is evident then the negative part of the warranty is broken throughout. Let us then advert to the affirmative; that there lhall be every document to prove the neutrality. From Lovett’s own anfwer to the {landing interrogatories it appears the veflel had no fea brief. The effedt of this paper is that of a paffport: and it is indifpenfable for a veffel to be fumiihed with it. Price v. Bell 1 East 663. Rich v. Parker 7 D. and E. 705. That Ihe had it not, is evident from the admiralty proceedings, and the lift of papers exhibited there. It may perhaps be contended, that as the treaty with France was abrogated, the doilrine in East v. Price, which was the cafe of an American veffel captured by a French privateer, and condemned for want of a páffport, does not apply. It is not, however, only by the treaty with France that this document is required. By thofe with Spain, Holland and Algiers,* it is equally neceffary. The importance of the paper-cannot be better evinced than by referring the court to the argument of Lord Kenyon in Rich v. Parker before cited. It is evident, therefore, either that the affured has not ailed as he ought to have done ; in confequence of which, the veffoj was carried in and condemned, and, therefore, the underwriter difeharged, or that ihe was not properly documented, being deftitute of a fea brief or paíiport, a paper effential to the fecurity of veffel and cargo. Under cither of thefe poft *559 tions the inference muit be the fame, and a new trial, it is hoped, will be awarded.
The court in its decifion may lopk beyond the fentence, and into the other general proceedings. In Bernard! v. Motteux, Doug. 575. the procefs verbal was received. So in Colvert v. Bovif 7 D. and E. the court adopted the fame principle, and adverted to things dehors* the fentence. Whenever the mailer has been guilty of mala fides, even further proof is not allowed, nay, condemnation inevitably enfiles. The cafe of the Welvaart, 1 Rob. Ad. Rep. 124. and that of the Vrouw† in the fame book 164. fully eitabliih this.
Harifon contra. This is a voyage by an American merchant to Carthagena. It is unneceffary, therefore, to refer to the evidence before the court to íhew that the nature of this trade, and the neceility of a Spaniih name, were well known arid notorious to all the world. No one is, or was ignorant that foreigners had been prohibited from commerce with die Spaniih colonies, and that even their own fubjects could not traffick from neutral countries, till after the order of the 17th of November, 1797. Up to that period, the whole trade of the American dominions of Spain had been confined to Spaniards trading from Spain. In ’97 the order above mentioned made the relaxation alluded to j and, for the fake of fupplying their foreign territories, the Spaniards allowed importations from foreign countries. This will furniih a clue to a great part of this bufinefs, and ihew the conítruótion we ihall contend for to be right. As to the poffibility of licences, whether they exiit or not is immaterial. The want of one was never made a part of the defence. It is enough to advert to the nature of the trade, and if this was notorious, and could be carried on but in the name of a Spaniard, then that it ffiould be ufed, muit be confidered as intended by the affured, and taken as part of the contract by the aifurer. That a licence was never in contemplation is manifeit from the exception at the foot of the policy: ££ riik of feizure and “ detention in port excepted.” What then is the language of the policy ? We will not take this rilk in port, becaufe we know the trade. Under a licence it cannot be, for the licence
*560 -would protedt you there : under the royal order it is equally impoffible, becaufe then, a Spaniard could have no- danger againfh which to wiih an indemnity; but"againft a feizure in port, an American would have to guard, becaufe there- * ® alone could there be danger to him, and this we undertake. Therefore, granted that the ufual claufe of warranty againft ■Illicit trade is retained-in the policy, this only Hands in oppo"fition to the claufe at the bottom, and ihews the nature of the trade known to .be an attempt to evade -the royal order of ’97. If this conftrudlion be right, then is the .policy confiftent throughout. No rifle, fay the underwriters, do we undertake from contraband trade, except when in port. All. others are at your hazard, but as to the neceflary means to cover the trade that you, the allured, mult ufe for our fecurity, and as freely as you think fit. Therefore, want of good faith is not to be imputed to the plaintiff, all -that he did, being in the courfe of trade; equally within the view of hirrtfelf and the underwriter. If, then, the veffel departed from hence to avail itfelf .of the order of 1797, -the neceffity of the property affuming a Spanifh appearance-muft appear to the court, and this alone will unravel the whole proceedings. Lovett’s depofitions in the admiralty fhew -it was neceflary to clear out for Spain, nor does the clearance for New-York convidt him of a falfehood in -this refpedt. -It is requifite, for ■the carrying on the fyftem of trade the plaintiff embarked in, that the veffel fhould be rcgijlered as having cleared out for Cadiz, to enable him to protedt his cargo againft -their own . guardacoftas, and ftill they may give him another clearance for New-York, which never was entered in the regiftry of -.the Cuftom-Houfe. This violation of principle is not according to moral duty we confefs, but the tranfadtion was with a Spanifh Cuftom-houfe, and it is evident that the two clearances were not by the fame Officer 5 fo that the explanation given, Hands perfedtly with the nature of -the trade. That the money has not been included in the clearances is elucidated by the fame means j by a reference to the commerce infured. The cafe Hates it; the exportation of coin and bul-, lion are prohibited; to take them out of the country recourfe is had to fmuggling, in which, if difeovefed, imprir
*561 Eminent for life is the mild penalty of the law. How then could it be entered and cleared ? The concealment then, here fo much cried out upon, arofe-from the nature of the trade, and was a meafure to which the allured was neceflari- , Iy reduced. This furnilhes, in part, an anfwer to the of <c American property,” 66 warranted American' property,” “ to be furnilhed with all documents to prove it American-<c property, « and none to iliew it Spanilh,” in ihort,- to all that has been urged on the negative and affirmative dodtrineof warranties.. This appears more fully, on viewing the me» morandum at the foot of the inftrument. Proof of property is by that, to be made in New-York. What can this mean», but that the allured will not be concluded by any foreign determinations, that he referves to a trial of his own countrymen the queftion of American property or not, and will not fubmit it to extra forenlic tribunals ? Why is this to be fo ? Becaufe the tranfadtions were to bear the femblance Spanilh intereft> and the contrary could not, in any place, be fo well ihewn- as here, where all the property and bulinefs ■could be eftabliihed where, it was neceffary only to ihew it adtually American, however it might appear.. In 3 Val.. 128, this petition is acknowledged. There the trade-was no-? torioufly illicit, being of filk from Barcelona to France, yet» under fimilar. circumftances as the prefent cafe, the underwriter was,, on account of the notoriety, held liable. The concealment, therefore, here, is no more than a means of carrying on the trade. If this- be corredt,. all the obfervations on concealment and documents are overthrown, for they are in the courfe of trade, and done for the benefit of the underwriter; It is true the court leaned to that idea in Goix v. Low, but the court of errors- reverfed that determination; and here it is-to be obferved, the nature of the-trade demanded the papers made ufé of. They were obtained: in the moft perfect bona lides,.and. can it be faid that the contradi is thereby deftroyed l Againft the fuppofition of a joint intereft between Blagge and Thorres.. the iepofitions in the admiralty are full evidence. The fame was teftified" here j fo that die proof of property, under the policy, is complete.* • All this, however, is to be done away by circumftances.
*562 which the nature of the tranfactions fully explain. The clearance for Cadiz, and all the other documents giving a Spaniíh afpect' to the bufinefs, are neceffary proceedings ta enable the plaintiff to avail himfelf of the royal order of’97, . , v T he letters on the fubjeft detail the methods to be adopted for that purpofe, and though it is mentioned by Drake that the goods had been delivered to their « owner,” it muff be recollected it was poilible that letter* might fall into Spaniíh hands on the coal!:. But, whoever it might deceive, it could not deceive him to whom it was addrefféd. One, it is hoped; infUperable objection to all the arguments ufed to evince Spaniíh property in the cargo is, that they are drawn merely from circumftaiices, whereas the evidence of neutral property in (he plaintiff is derived from the moil pofitive affidavits. The animadverfion on the date of the letter is hardly worth anfwering. It could not, by defign, have been dated in June, 1797, and fpeak of the order of November follow» .ing ; but if we make a rational fuppofition that, in. copying the date, ’97 was, by miftake, inferted inftead of ’99, the whole myftery yaniihes. This feems'very probable, for the letter came by a veffel which failed in ’99. .Neither is there any contradiction in Lovett’s teftimony as to concealment of papers-; becaufe, when examined under the" Handing interrogatories, they were all actually delivered up. Every meafure, adopted by the mafter of the veffel, was clearly prudential ; and, therefore, if bona fide, muft be protected. No argument can be drawn from the cuftom-houfe bond being entered into only for merely a fourth of the net profits; for we have the fame tranfaCtions here every day for only a commiffion. That fea brief and pafíport, are fynonimous terms may be doubted—1 Marsh, 317. But whether fo or not is immaterial, for the veffel carried fully as authentic a document. She was commiifioned as a letter of marque, and nothing ftronger could be produced to fubftantiate her .national character, That this ihould have been communicated to the underwriter cannot be urged, becaufe, when a veffel is not de%ne4 to cruize, the being commiifioned is fettled† to be an ímmateria¡ faCt..- The objection, however, not being made at the'trial, cannot now be heard. All indeed that has been faicl.
*563 relating to {hips’ papers, is totally irrelevant,, as the warranty is only to the cargo and not to the íhip. The whole cafe prefents a ttatement of American property engaged in a trade notorioufly to be carried on under Spaniih appearances ; and, therefore, if the court fee the warranty of property has been complied with from the general tenor of fadts fubmitted, the yerdidt ought to ftand.
Hamilton in reply. To its being fo our objedtions are two-fold; one from the condudt of the matter as the agent* of the plaintiff; the other on account of the defedt in complying with the warranty. His condudt is eonnedted with * J ° * # the queftion of warranty, becaufe it is to be- fuch as will not compromit the property. Therefore, if the condudt of the affured has that effedt, it is a breach of the neutrality warranted. In Jackfon ---- in this court, it was held that though the property warranted American, was adtually fo at the time of effedting the policy, yet, as the affured had, by a transfer, altered the nature of the fubjedt matter, the warranty was not complied with. In the prefent cafe, the mifcondudt was glaring. Firft, as to the falfe papers; fecondly, in the behaviour manifefted at the time of capture. On the full effedt of the former, in cafes like the prefent, there is no decifion. But if it were held as fatal, it would not, perhaps, be too ftrong a conclufion, An underwriter ought to know how to calculate his riík; this is never to be done if the affured has it in his power to give any afpedt he may think fit to the property infured. In another point of view it ought to be fatal; no court ought to coniider that men will adt on a principle of deceiving any power whatfoever. Even policy will fuggeft this rule, for who can blame belligerents for intercepting our trade when they fee it has been diredti* • r r i . ed in a continued courie oi deceptive commerce r On this again the books afford no authority ; the only cafe is that ef the Oftend† veffel, and there the court went on the notoriety of the trade 5 nothing but this will afford a juftifieafory reafon. The condudt adopted by the plaintiff’s , , , ... gave to an American adventure all the danger of a belhgerent rifle, and this at only a premium for a neutral hazard 5 this circumftance affords one of the indicia by which we are
*564 to judge no fpecies of illicit tirade could be in the" contem>0 1 plation of the underwriters. The claufe at the bottom of the? policy does not contradiét this pofition; it "is coupled with ^ P1"00^ American property ; there is no Hop to difconthem, and, therefore, the court muff take them together, and not with a reference to the claufe againft illicit trade. In this fenfe, therefore, the exception is nothing more than that, in cafe of feizure or detention in ports, proof of American property {hall not be demanded in New-York. It is not, as contended for, a difavowal of being bound by the opinion of other tribunals 5 if they are not conclufive they are to be looked into, and even all other documents on which the fentence has been framed ; will not then the court look into the general conduét of the plaintiff’s agent, as it appears by the proceedings, and fee if it does not amount to that o£ a breach of neutral conduét which amounts to a breach of warranty, and, therefore, the verdiét neceffarily to be fei alide ?
Per curiam, delivered by Lewis, C. J. The effeét and ful» iilment of the warranty of neutrality, are the points on which the controverfy, between thefe parties, principally turns. A diftinétion is fet up between this and a general warranty of neutrality on. account of the qualification, as it is termed, contained in the ftipulation that prof if required, is to be made in New~TorL The defign of introducing this claufe in policies is notorious. It was to fteer clear of the doétrine of the conclufivenefs of foreign fentences, and cannot affeét the effence of the warranty. The obligation of that muff remain the fame wherever the proof of performance may be exhibited. A warranty of neutrality, in a policy of infurance, imÍ; ports, not merely that the property is neutral, but, that it \ {hall be accompanied, on the voyage, with all the accuftomed í documents to inlure it refpeét as fuch, within the laws of nations. And, although the queition has never, to my know-j ledge, been decided, the fame principle will require, that it | be unaccompanied with any document that fiiall compromit ! its neutral charaéter. "W here the affured, by means of falfe papers, or by any other improper conduét, inveits the property .with the double character-of neutral and belligerent, *565 Be his motives what they may, he fubjedts it to a riik,- againft which the underwriter did not infurc, and, of courfe, releafes him from all refponfibility. The affured ftipulates, by his warranty, that the infurer iliall be liable for a neutral riik 1 _ alone. The inftant, then,'that he attempts to put him to the hazard of a belligerent rifle, he forfeits his claim to an indemnity. Nor does the dictum, cited from Valin, if admitted in its broadeft latitude, in the leaft ihake this principle. For, although the underwriter may be bound to know the nature of a trade notorioufly illicit, it does not follow that he is to be liable to the confequences of every ingenious device that may be reforted to as a cover for the property. But, were it otherwife, the dodtrine of Valin would not apply to the cafe before us. The trade, in which the Flora was engaged, was not notorioufly illicit, for it is ftated to have been fometimes permitted, at others prohibited. The ■underwriters appear to have intended to guard themfelves againft the confequences of an illicit trade by excepting from the riik, Jeizure or detention in port.
There is another circumftance in the prefent cafe which militates ftrongly againft the plaintiff’s right to recover. It is a maxim that neutral commerce is to be condudted with* good faith towards belligerents. Their rights are to be refpedted as well as thofe of neutral nations. It is not fuffi-; cient that a part only, but the whole property, covered by the ] policy, muft be neutral. And if a cover is attempted for) enemy’s property, by an intermixture with neutral, it is held j to fubjedt the whole to coniifcation. In the prefent inftance ‘ it is ftated, that the homeward cargo was pur chafed with the proceeds of the outward. Now the latter fold for 55,500 dollars, and the former coft 89,000 dollars. It was incumbent then on the affured to {hew, that the excefs was alio American property. This might have been ihewn had the fadt been fo. It does not appear, however, that this was attempted. And, although it was a queftion fubmitted to the jury, I think, we are bound to fay that, as to this, their verdict was againft evidence.
I am of opinion, that the verdidt ought to be fet afide and a new trial awarded.

 A court of complied with.* It is neceffary, therefore, thataneuter ihould admiralty is

 “ As to the condition to return to i'ome port of ¿pain, which from his paying Cadiz duties it is faid, might be in-.pofeu upon the matter, Í fee nothing in that which will materially affedt him, after the various cafes from .Surinam, in which, although bonds had been given to return to Holland, this court has reftored, on the matter’s making fatisfactory proof, that they did not intend to comply with *555 the condition and intended to fubmit to the penal forfeiture.” P r. Sr. W. Scott in the Providentia i Rob. Ad. Rep. 153» Eng. edition»

 Planche v. Fletcher, Doug 238

 See Kernoway v. Noble, Drug. 510 contra.

 The pair-port by^ the Al-¡¡"very different iSbrifef?nüeehe Amrr. App.

 This is a miRaicr .n the learned counfel j the court theed looker afc the fentence a* lone, which Rated unwarrantable reafons for condemnation,

 The Vrouw Hermina is the cafe alluded to»

 fei otTboth fidcs cauf^a'/if’the was tr°m Biagge, where-Do‘nVManueíie ..hones.

 Moss v. Byrom is supposed to be the cafe alluded to - 6 D. & E. 379.

 ofaveffeiTsnot n^pe™fgoods n,ot ®YeI? whcn the imp is owned'by the flopFefs’when.asin ther^wa^a fuPcrcars0-

 Planche v. Fletcher, Doug. 251, where the Saaiythe* remorai°fpÓ-e becaufe ufage was merely in contravention of pofitive) not morluiuucL